UNITED STATES DISTRICT COURT
GEORGIA NORTHERN DISTRICT COURT

H.M., an individual;

          Plaintiff

    -against-

RED LION HOTELS CORPORATION;

DAYS INNS WORLDWIDE, INC.;

AND WYNDHAM HOTEL & RESORTS, INC.;

        Defendants.

CIVIL ACTION NO : 1:19-cv-04859-JPB

**FIRST AMENDED COMPLAINT**
**JURY TRIAL DEMANDED**

## AMENDED COMPLAINT

COMES NOW the Plaintiff H.M., by and through the undersigned counsel, and respectfully submits her complaint for damages and makes the following averments.

## INTRODUCTION

1. For years, sex trafficking ventures have brazenly operated in and out of hotels throughout this country. Criminals parade their misconduct openly on hotel properties throughout the United States while the hotels and hospitality industry remain willfully blind to the criminal misconduct to continue earning a profit at the expense of human life, human rights, and human dignity.

2. Red Lion Hotels Corporation (hereinafter "RLH Corporation") and Wyndham Hotel & Resorts, Inc. through its wholly owned subsidiary, Days Inns Worldwide Inc., (hereinafter collectively referred to as "Wyndham") know and have known for more than a decade that sex trafficking repeatedly occurs under their flag throughout the country. Rather than taking timely and effective measures to thwart this epidemic, both RLH Corporation and Wyndham have instead chosen to ignore the open and obvious presence of sex trafficking on their properties; enjoying the profit from rooms rented for this explicit and apparent purpose.

3. This action for damages is brought by the Plaintiff, a survivor of sex trafficking hereinafter

1

identified by her initials H.M., under the federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (hereinafter "TVPRA").

4.  H.M. was trafficked for commercial sex at the age of 25 years old in northern Georgia. Her trafficker presented himself to the Plaintiff as a friend at a time when she was acutely vulnerable. He loaned her money so that she would not lose her housing and then used physical violence, emotional manipulation, and that peonage to force H.M. into performing commercial sex for his profit and under his captivity and control.

5.  The Plaintiff now brings this action for damages against the Defendants listed herein.  Each of the Defendants, in violation of 18 U.S.C. § 1595, knowingly benefited from participation in a venture that they knew, *or should have known*, to be engaging in sex trafficking in violation of 18 U.S.C. § 1591(a).

6.  H.M. was advertised on www.backpage.com against her will, physically tortured, and then sexually exploited under such duress at hotels in Jonesboro and Morrow, Georgia, including the America's Best Value Inn₃₀ and the Days Inns₀₀ respectively.

7.  As a direct and proximate result of RLH Corporation and Wyndham's consistent refusals to prevent human trafficking on their hotel properties, H.M. was sex trafficked, sexually exploited, and victimized repeatedly at both RLH Corporation and Wyndham brand hotels.

8.  The Plaintiff brings this action pursuant to the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. §1595, against the Defendants who enabled, harbored, held, facilitated, and financially benefited from a venture in which H.M. was trafficked for the purpose of commercial sex, sexually exploited, and brutally victimized in violation of 18 U.S.C. §1591 (a).

## PARTIES

9.  The Plaintiff, having moved to proceed anonymously,[1] and, herein, identified by her initials

---

[1] Contemporaneously with the Complaint, Plaintiff H.M. filed a Motion for Protective Order and Leave to Proceed Anonymously with Memorandum in Support based upon the nature of the allegations in the instant Complaint, which are of an inherently intimate and personal nature. That motion is pending. Undersigned Counsel will provide her identity to counsel for the Defendants upon proper effectuation of service.

H.M., was 25 years old when she was trafficked in several hotels in Jonesboro and Morrow Georgia for the purpose of commercial sex. The Plaintiff is a victim of trafficking pursuant to 22 U.S.C. §7102 (15) and 18 U.S.C. §1591 (a), and a victim of a "severe form of trafficking" as it is defined under 22 U.S.C §7102 (14). The Plaintiff currently resides in Newton County, Georgia.

10. Defendant Red Lion Hotels Corporation ("RLH Corporation") is a Washington corporation and can be served by its registered agent Corporate Creations Network, 2985 Gordy Parkway, Marietta, GA, 30006. America's Best Value Inn₃₀ is a RLH Corporation brand property.

11. Defendant RLH Corporation is the parent company of the hotel chain America's Best Value Inn₀ₑ. RLH Corporation retains successor liability for the wrongful acts of its predecessor America's Best Value Inn₃₀.

   a. As a hotel operator, Defendant RLH Corporation controls the training and policies for its branded properties including the America's Best Value Inn₃₀ where H.M. was trafficked. Defendant RLH Corporation represents that it considers guest safety and security important and requires the hotels in its portfolio to comply with RLH Corporation brand standards and all local, state, and federal laws.[2]

   b. Through its relationship with the staff at the America's Best Value Inn₃₀ where H.M. was trafficked and the perpetrator who trafficked H.M. at America's Best Value Inn₃₀ hotels while registered as a guest there, Defendant RLH Corporation knowingly benefited or received something of value from its facilitation of, or participation in, a venture which it knew or should have known had engaged in sex trafficking.

   c. RLH Corporation receives a percentage of the gross room revenue from the money generated by the operations of America's Best Value Inn₃₀ hotels, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in

---

[2] RLH Corporation, Caring for our Community and Environment, https://rlhcorp.gcs-web.com/static-files/1176feb7-6705-49a1-80e1-9185e85bbc8b (Last visited 1/7/2020).

which the Plaintiff was sex trafficked.

d.   At all relevant times RLH Corporation owned, supervised, and/or operated the America's Best Value Inn₃ located at 6358 Old Dixie Highway, Jonesboro, Georgia 30236.

12.    Defendant Wyndham Hotel & Resorts, Inc. is another of the world's largest hotel companies and offers public lodging services directly or through its affiliates, subsidiaries, and franchisees. It is a Delaware corporation with its headquarters in Parsippany, New Jersey.

13.    Defendant Days Inns Worldwide Inc. is a wholly owned subsidiary of Defendant Wyndham Hotel & Resorts, Inc. It is a Delaware Corporation with its headquarters in Parsippany, New Jersey.

a.   Defendant Wyndham Hotel & Resorts, Inc. is the successor entity to Wyndham Worldwide Corporation and retains successor liability for the wrongful acts of the predecessor.

b.   Days Inns₃ brand hotels are Wyndham hotels.

c.   As a hotel operator, Defendant Wyndham controls the training and policies for its hotels including the Days Inns® hotel where H.M. was trafficked.

d.   Defendant Wyndham maintains that it considers guest safety and security to be important and requires the hotels in its portfolio to comply with Wyndham brand standards and all local, state, and federal laws.[3]

e.   By and through its relationship with the staff at the Days Inns₃ hotel where H.M. was trafficked and the hotel guest perpetrator who trafficked her at a Days Inns® hotel, Defendant Wyndham knowingly benefited, or received anything of value, from its facilitation of, or participation in, a venture which it knew or should have known to engage in sex trafficking.

---

[3] Wyndham Hotel & Resorts, 2019 Social Responsibility Report: Protecting Our Human Rights (p.30) available at https://corporate.wyndhamhotels.com/wp-content/uploads/2019/07/Wyndham-GRI-2019-Final_web.pdf (last visited Nov. 20, 2019).

f.  Wyndham receives a percentage of the gross room revenue from the money generated by the operations of all Days Inns® hotels, including a percentage of the revenue generated from the rate charged for the rooms in which the Plaintiff was sex trafficked.

g.  At all relevant times, Wyndham owned, supervised, and/or operated the Days Inns® by Wyndham – at 1599 Adamson Parkway in Morrow, Georgia.

h.  Wyndham is subject to the jurisdiction of this Court because it regularly transacts business in Georgia, operates dozens of hotels in Georgia, contracts to supply services in Georgia, and caused indivisible injuries to a vulnerable Plaintiff by participating in a sex trafficking venture that arose out of a common course of conduct occurring in the state of Georgia.

14.  Whenever reference is made in this Complaint to any act, deed or conduct of the Defendants, the allegation is that the Defendants engaged in the act, deed, or conduct by or through one or more of their officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of the Defendants.

## JURISDICTION AND VENUE

15.  This Honorable Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 because this action arises under the Constitution, laws, or treaties of the United States (with an amount in controversy that exceeds $75,000.)

16.  Venue is proper in this district pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action, including the Defendants' misconduct and omissions, occurred in the judicial district where this action is brought.

## SEX TRAFFICKING UNDER FEDERAL LAW

17.  Sex trafficking is defined by the TVPRA under 22 U.S.C. § 7102, as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of a commercial sex act and in which the commercial sex act is induced by force, fraud, or coercion." This

definition combines the three elements of sex trafficking as a criminal offense: the act, the means, and the purpose.

18.     To best understand the mechanism by which sex trafficking ventures are prohibited by federal criminal law, it's best to address these elements in the reverse.  Sex trafficking is slavery for the *purpose* of commercial sex, a lens on the already existing crimes prohibited by 18 U.S.C. § 1589 and §1590.  The crime of slavery can then be divided into the two (2) elements remaining: the act and the means.  The *act* is the "harboring, transporting, providing, or obtaining," of forced labor, codified as a violation of 18 U.S.C. §1590, while the *means* is labor "obtained or provided by force, fraud or coercion" and is codified as a violation of 18 U.S.C. §1589.

19.     Thus, while the complete definition of 'sex trafficking' is found in the TVPRA under 22 U.S.C. § 7102, and it is specifically prohibited under 18 U.S.C. §1591, it is nevertheless a long-recognized and familiar atrocity.

20.     Pursuant to 18 U.S.C. §1591(a), all who knowingly provide *or* obtain commercial sex that was provided or obtained through force, fraud, and coercion are guilty of sex trafficking.  This includes, at a minimum, ***both*** the 'traffickers' who recruit, harbor, transport, and provide individuals for forced commercial sex work *and* the 'Johns' or 'buyers' who obtain, solicit, or patronize forced commercial sex work.[4]

## FACTUAL ALLEGATIONS

## A. THE HOSPITALITY INDUSTRY'S PARTICIPATION IN THE SEX TRAFFICKING INDUSTRY

*"75% of survivors responding to Polaris's survey reported coming into contact with hotels at some point during their exploitation…Unfortunately, 94% also disclosed that they never received any assistance, concern, or identification from hotel staff."*

---

[4] While the 'pimps' or 'providers' are often referred to as the 'traffickers' and the purchasers are referenced as the 'Johns', 'tricks', or 'buyers' [and such nomenclature is used herein], under federal law *both* categories are 'traffickers'.

6

*-The Polaris Project* [5]

21.    Human trafficking is the world's fastest growing crime.[6]  While the term 'human trafficking' incorporates all forced labor, the sex trafficking industry alone pulls in an estimated $99 billion each year making it the second largest illicit crime industry behind only the sale of *all* illegal drugs.[7]

22.    Sex traffickers, or 'pimps', use threats, violence, manipulation, lies, debt bondage, and other forms of coercion to compel adults and children to engage in commercial sex acts against their will.

23.    The hospitality industry plays a crucial role in the sex trade.[8]  The trope of the "no-tell motel" is certainly not a new one.  Hotels have long profited from their reputations as havens of privacy and discretion for the offending.  Hotels offer anonymity and non-traceability, making them ideal venues for crime and sex trafficking in particular.

24.    According to National Human Trafficking Hotline statistics, hotels are the top-reported venue, even over commercial front brothels, where sex trafficking acts occur.[9]  Traffickers and buyers alike frequently use hotel rooms to exploit victims.

25.    Traffickers use hotels as the hub of their operations. Inside, the victims are harbored, raped, assaulted, and forced to service buyers who come to the hotel solely to purchase sex.  This is referred to as an 'in call'.

26.    Hotels are also the venue of choice for buyers seeking an 'out call,' wherein the buyer rents a hotel room and the trafficker delivers the victim to the buyer's room to complete the sordid transaction. Unsurprisingly, those on the demand side of this transaction (i.e. those purchasing sex) typically choose to engage in trafficking away from their home, naturally leading to the increased involvement of hotels.

---

[5] *Recommendations for Hotels and Motels*, THE POLARIS PROJECT, https://polarisproject.org/hotels-motels-recommendations (last visited June 19, 2019).
[6] *Human Trafficking is the World's Fastest Growing Crime*, THE ADVISORY BOARD (May 22, 2017, 9:30 AM), https://www.advisory.com/daily-briefing/2017/05/22/human-trafficking.
[7] *Profits and Poverty: The Economics of Forced Labor*, INTERNATIONAL LABOR ORGANIZATION (May 24, 2014), http://www.ilo.org/global/publications/ilo-bookstore/order-online/books/WCMS_243391/lang--en/index.htm.
[8] Giovanna L. C. Cavagnaro, *Sex Trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY SCHOOL OF HOTEL ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3.
[9] *National Human Trafficking Hotline Statistics*, THE POLARIS PROJECT (2016), https://polarisproject.org/resources/2016-hotline statistics.

7

In New York City alone, 45% of all reported sexual exploitation took place in hotels, including the Ritz Carlton and the Plaza.[10]

27.    The problem is industry wide.  In the United States, as much as 63% of all trafficking incidents happen in hotels ranging from luxury to economy.[11]

28.    Due to the overall complacency of the hospitality industry on addressing the issue, hotels are *the* venue of choice for sex trafficking.[12]  Traffickers and buyers capitalize on the hotel industry's general refusal to adopt and enforce companywide anti-trafficking policies from the corporate to the property level, train staff on what to look for and how to respond, and/or establish safe and secure reporting mechanisms for those at the point of sale.

29.    Every day, thousands of hotel employees witness manifestations of sex trafficking and commercial exploitation.  Thus, the hospitality industry has the greatest reach to prevent, identify and thwart sexual exploitation where it is most likely to occur.

30.    But aside from their unique position in this epidemic, hotels and motels have the highest obligation to protect their guests from known dangers, including sex trafficking and sexual exploitation, and should be held accountable when they fail to comply.  As aptly stated in a publication by the Cornell University School of Hospitality, "the hospitality industry is undoubtedly involved in the sex trafficking industry...and therefore has an inherent responsibility to deter the crime and can be liable for failing to do so."[13]

31.    Training hotel staff to identify the signs of sex trafficking and sexual exploitation is a critical and obvious legal obligation for the hospitality industry.  The presence of sex trafficking and sexual exploitation in a hotel is frequently an obvious occurrence and, although unutilized, underutilized, or ineffectively utilized, numerous well-researched trainings and toolkits have been published to the hotel

---

[10] Giovanna L. C. Cavagnaro, *Sex Trafficking: The hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY, SCHOOL OF HOTEL ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3.

[11] Michele Sarkisian, *Adopting the Code: Human Trafficking and the Hospitality Industry*, CORNELL HOSPITALITY REPORT. 15(15), 3-10 (2015).

[12] *Hotels Initiative*, THE POLARIS PROJECT, https://polarisproject.org/initiatives/hotels (last visited June 19, 2019).

[13] Giavanna L. C. Cavagnaro, *Sex trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY, SCHOOL OF HOTEL ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3.

8

industry over the last decade to help hotel staff in every position to identify the signs.[14]

32.    From check-in to check-out there are a number of indicators that traffickers and their victims exhibit during their stay at a hotel. With proper training and the implementation of reasonable security measures, hospitality companies could prevent regular sex trafficking under their flag.

33.    Obvious signs of sex trafficking at a hotel may include: an excess of condoms in rooms, individuals carrying or flashing large amounts of cash, excessive amounts of cash stored in the room, renting two rooms next door to each other, declining room service for several consecutive days, significant foot traffic in and out of rooms, men traveling with multiple women who appear unrelated, women known to be staying in rooms without leaving, women displaying physical injuries or signs of fear and anxiety, guests checking in with little or no luggage, hotel guests who prevent another individual from speaking for themselves, or a guest controlling another's identification documents.[15]

34.    Obviously, hotel staff who have undergone training are more aware of sex trafficking when it happens and are more willing to report it than hotel staff who have not been trained.[16] Thus, hospitality companies are obligated to adopt policies and procedures related to sex trafficking and to enforce these policies and procedures as brand standard through to the property level.

35.    Hospitality companies can and should mandate that *all* staff working at *all* hotel properties across their brand complete sex trafficking training.[17]

36.    The hospitality industry has been cognizant of their role and responsibilities in the sex trafficking industry for years.

37.    Further, nationwide campaigns recognized the issue of human trafficking in the hotel industry

---

[14] DEPARTMENT OF HOMELAND SECURITY, *Blue Campaign Toolkit*, attached as "Exhibit A." Available at: https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf.

[15] Id. See also, Shea M. Rhodes, *Sex Trafficking and the Hotel Industry: Criminal and Civil Liability for Hotels and their Employees*, THE INSTITUTE TO ADDRESS CRIMINAL SEXUAL EXPLOITATION, Villanova University School of Law (2015), https://cseinstitute.org/wp-content/uploads/2015/06/Hotel_Policy_Paper-1.pdf.

[16] Giavanna L. C. Cavagnaro, *Sex Trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY, SCHOOL OF HOTEL ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3.

[17] Shea M. Rhodes, *Sex Trafficking and the Hotel Industry: Criminal and Civil Liability for Hotels and their Employees*, The Institute to Address Criminal Sexual Exploitation, Villanova University School of Law (2015), https://cseinstitute.org/wp-content/uploads/2015/06/Hotel_Policy_Paper-1.pdf.

9

and the lack of internal policies to address the issue, and took initiative as early as 1997 with the United Nations Blue Heart Campaign and domestically in 2010 with the Department of Homeland Security's Blue Campaign.[18]   These efforts sought to educate both the public and private sectors on identifying and combatting human trafficking, including the hospitality industry and both campaigns released online resources and toolkits publicly accessible to any entity concerned with human trafficking.[19]

38.    Defendant Wyndham has been educated on the occurrence of sex trafficking since at least 2011, when it started training *some* of their employees.[20]

39.    Hospitality companies have both the power and responsibility to make sex trafficking difficult for the offenders. Yet, they either repeatedly fail to heed the call or repeatedly failed to execute their own policies.  Instead, each continues to facilitate these crimes at their hotels, content to direct their efforts solely to profit and the bottom line.

## B.    THE DEFENDANTS CONTROL THE HOSPITALITY INDUSTRY

40.    Hotel brands or flags lend their name and likeness to third party owners, while the building and operations are run by a franchisee or a third party management company under the brands' control. In return, the parent brand exchanges the high risk that is inherent in owning an asset like a hotel for the low risk associated with owning a franchise contract and still profits from putting heads in beds.

41.    The average consumer does not see this relationship.  The parent brand gives the franchisee property its identity.  It provides signage on and in front of the building that assures customers that if they check into that hotel they can expect the standards consistent with the parent hotel brand.  The same brand emblazoned on everything in the hotel from the pens in the bedside tables to the staff uniforms at the front desk.

42.    In addition to brand recognition, a marketing organization, hotel listings in the Global

---

[18] *DHS Blue Campaign Five Year Milestone*, DEPARTMENT OF HOMELAND SECURITY (Jul. 22, 2015), https://www.dhs.gov/blog/2015/07/22/dhs-blue-campaign-five-year-milestone.

[19] *Human Trafficking and the Hospitality Industry*, DEPARTMENT OF HOMELAND SECURITY, https://www.dhs.gov/blue-campaign/hospitalityindustry (last visited June 19, 2019).

[20] Dallas Franklin, *Several Hotel Chains Training Workers to Spot Human Trafficking*, CNNWIRE, (Nov. 18, 2014), https://kfor.com/2014/11/18/several-hotel-chains-training-workers-to-spot-sex-trafficking/

Distribution System (GDS) and other online travel agency databases, the brand provides the franchise hotel with access to its brand wide central reservation system, 800 number, revenue management tools, world-class loyalty programs and a website. Thus, booking and room reservations are controlled by the corporate parent brand.[21]

43. The franchise hotel typically pays around 10% of their total revenue back to the parent hotel brand and is required to develop and maintain the property in accordance with the parent brand's standards as they are laid out in the franchise agreement.

44. Per the franchise agreement, the parent brand may enforce these standards through periodic inspections and even termination of the franchise agreement if the franchise hotel is found to be inadequate. The right of the parent hotel brand to enforce their brand standards is also their responsibility.

45. At the time of the incidents alleged herein:

    a. Defendant Red Lion Hotels Corporation owned and controlled the America's Best Value Inn₃₀ brand.

    b. Defendant Wyndham owned and controlled the Days Inns® brand.

46. Parent hotel brands may kick delinquent hotels out of their system but it is at the expense of terminating their royalty payments.

## C. THE DEFENDANTS' WILLFUL BLINDNESS TO SEX TRAFFICKING AT THEIR HOTELS

47. Defendants RLH Corporation, and Wyndham have been on notice of repeated incidences of sex trafficking occurring at their America's Best Value Inn₃₀ and Days Inns® hotels yet these brand managers failed to take the necessary action to prevent sex trafficking and still persist in failing to take the necessary action to prevent sex trafficking at their hotels.

48. Red Lion Hotels Corporation ("RLH Corporation"):

---

[21] Ellen Meyer, *The Origins and Growth of Franchising in the Hotel Industry*, LODGING MAGAZINE (April 10, 2018) https://lodgingmagazine.com/the-origins-and-growth-of-franchising-in-the-hotel-industry/.

a.   Defendant RLH Corporation owns, supervises, or operates the America's Best Value Inn at 6370 Old Dixie Highway, Jonesboro GA 30236.  RLH Corporation failed to implement and enforce any of its own policy or policies and protect Plaintiff H.M. from being sex trafficked.

b.   RLH Corporation knew or should have known that the America's Best Value Inn hotel where Plaintiff H.M. was trafficked was an area known for high incidence of crime and prone to sex trafficking activity on and around the hotel premises, including when Plaintiff H.M. was trafficked.[22]

c.   Despite having knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, Defendant RLH Corporation has repeatedly failed to stop these actions.

d.   Defendant RLH Corporation could have exercised control over America's Best Value Inn hotels by:

　　i.   distributing information to assist employees in identifying human trafficking;

　　ii.   providing a process for escalating human trafficking concerns within the organization;

　　iii.   requiring employees to attend training related to human trafficking;

　　iv.   providing new hire orientation on human rights and corporate responsibility;

　　v.   providing training and education to America's Best Value Inn branded hotels through webinars, seminars, conferences, and online portals;

　　vi.   developing and holding ongoing training sessions on human trafficking; or

　　vii.   providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

---

[22] *Jonesboro, Georgia Crime Rates*, NEIGHBORHOOD SCOUT, https://www.neighborhoodscout.com/ga/jonesboro/crime (last visited Oct. 23, 2019). *See also* Americas Best Value Inn – 6358 Old Dixie Highway Reviews, YELP, https://www.yelp.com/biz/americas-best-value-inn-jonesboro-3 ("If you are looking for drugs a pimp a hooker beg bugs this is the place to be…and this we were told by the registry office worker from behind a bulletproof glass!")

e.  RLH Corporation was in an agency relationship with America's Best Value Inn₀ branded hotels offering public lodging services in the hotel. This agency relationship was created through Defendant RLH Corporation's exercise of an ongoing and systemic right of control over America's Best Value Inn₀ hotels by Defendant RLH Corporation's operations, including the means and methods of how America's Best Value Inn₀ branded hotels conducted daily business through one or more of the following actions:

    i.    hosting online bookings on Defendant RLH Corporation's domain;

    ii.   requiring America's Best Value Inn₀ branded hotels to use Defendant RLH Corporation's customer rewards program;

    iii.  setting employee wages;

    iv.   making employment decisions;

    v.    advertising for employment;

    vi.   sharing profits;

    vii.  standardized training methods for employees;

    viii. building and maintaining the facility in a manner specified by the owner;

    ix.   standardized or strict rules of operation;

    x.    regular inspection of the facility and operation by owner;

    xi.   fixing prices; or

    xii.  other actions that deprive America's Best Value Inn₀ branded hotels of independence in business operations.

f.  An apparent agency also exists between Defendant RLH Corporation and America's Best Value Inn₀ hotels. Defendant RLH Corporation held out America's Best Value Inn₀ branded hotels to the public as possessing authority to act on its behalf.

g.  Given Defendant RLH Corporation's public statements on behalf of its hotel brands[23]

---

[23] *See* RLH Corporation, *LH Corporation Announces Collaboration With National Safe Place Network to Provide for Youth in Need of Immediate Help and Safety*, GLOBENEWSWIRE, (Aug. 22, 2019) https://www.globenewswire.com/news-

13

and the control it assumed in educating, implementing, and directing its branded hotels, including America's Best Value Inn₃₀ branded hotels, Defendant RLH Corporation breached its duties in the following ways:

    i.   did not adequately distribute information to assist employees in identifying human trafficking;

    ii.   failed to provide a process for escalating human trafficking concerns within the organization;

    iii.   failed to mandate managers, employees, or owners attend training related to human trafficking;

    iv.   failed to provide new hire orientation on human rights and corporate responsibility;

    v.   failed to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

    vi.   failed to develop and hold or require ongoing training sessions on human trafficking; or

    vii.   failed to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human trafficking prevention.

h.   For years, Defendant RLH Corporation has demonstrated willful blindness to the rampant culture of sex trafficking which tragically occurs on its America's Best Value Inn₃₀ branded properties throughout the country. This entrenched and pervasive willful

release/2019/08/22/1905438/0/en/RLH-Corporation-Announces-Collaboration-With-National-Safe-Place-Network-to-Provide-for-Youth-in-Need-of-Immediate-Help-and-Safety.html ("RLH Corporation President and Chief Executive Officer. I am proud to have our Americas Best Value Inn locations participate in the program, expanding NSPN's network, providing more locations in more communities for youth in crisis to go to for help, making a difference and direct impact in our Americas Best Value Inn communities…RLH Corporation is a perfect example of the hospitality industry's comprehensive commitment to safety." *See also* Red Lion Hotels Corporation: See Our Brands – Americas Best Value Inn at https://www.redlion.com/americas-best-value-inn ("At America's Best Value Inn guests can enjoy a small business feel and rest easy knowing they're getting the best value in town. Founded on American values, we believe in simplicity, friendliness, and honesty. ")

14

blindness to sex trafficking facilitated the victimization of Plaintiff H.M. at America's Best Value Inn₀ that forms the basis of this complaint.

   i.  AMERICA'S BEST VALUE INN₀

      i.  In September of 2019, a trafficker was sentenced to nine years in prison after selling a 15 year-old minor for sex out of the America's Best Value Inn in Scarborough, Maine.[24]

      ii.  In June of 2019, the America's Best Value Inn in Independence, Ohio was foreclosed upon. The police chief of Independence commented saying this was due to the fact that, "There were a disproportionate number of crimes compared to other hotels in the city. The management was less than cooperative with investigative efforts."[25]

      iii.  In May of 2019, nine women between the ages of 18-25 were rescued from sex trafficking in police stings at the America's Best Value Inn in Fort Hood, Texas. Fifteen individuals were arrested in correlation to the rescue.[26]

      iv.  In February of 2017, America's Best Value Inn in Salisbury, Maryland was sued on the grounds that it knew or should have known about the high volumes of young women sex trafficked through their doors.[27]

49.  Defendant Wyndham Hotel & Resorts, Inc. and Days Inns Worldwide Inc. ("Wyndham")

   a.  Defendant Wyndham owns, supervises, or operates the Days Inns® at 1599 Adamson Parkway Morrow, GA 30260.

---

[24] Liz Gotthelf, *Biddeford Woman Sentenced to Five Years for Promoting Prostitution*, JOURNAL TRIBUNE, (Sept. 26, 2019) https://www.journaltribune.com/articles/front-page/biddeford-woman-sentenced-to-five-years-for-promoting-prostitution/.
[25] Laura Bednar, *Independence Looks to Fill Previously Crime-Ridden Hotel*, CLEVELAND.COM, (June 9, 2019) https://www.cleveland.com/community/2019/06/independence-looks-to-fill-previously-crime-ridden-hotel.html.
[26] Deborah McKeon, *Nine Women Rescued, 15 People Arrested in Sex Trafficking Sting*, (May 14, 2019), TEMPLE DAILY TELEGRAM, http://www.tdtnews.com/news/article_33082288-7677-11e9-8f8f-f7c1c6ed38bf.html
[27] Jeremy Cox, *Human-Trafficking Victims Sue Salisbury Hotel*, DEL MARVA NOW, (Feb. 24, 2017), https://www.delmarvanow.com/story/news/local/maryland/2017/02/24/human-trafficking-victims-sue-hotel/98347930/

b.  Wyndham failed to implement and enforce any of its own policy or policies and protect Plaintiff H.M. from being sex trafficked.

c.  Wyndham knew or should have known that the Days Inns® hotel where Plaintiff H.M. was trafficked was an area known for high incidence of crime and prone to sex trafficking activity on and around the hotel premises, including when Plaintiff H.M. was trafficked.[28]

d.  Despite having knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, Defendant Wyndham has repeatedly failed to stop these actions.

e.  Defendant Wyndham could have exercised control over Days Inns® hotels by:

    i.  distributing information to assist employees in identifying human trafficking;

    ii.  providing a process for escalating human trafficking concerns within the organization;

    iii.  requiring employees to attend training related to human trafficking;

    iv.  providing new hire orientation on human rights and corporate responsibility;

    v.  providing training and education to Days Inns® branded hotels through webinars, seminars, conferences, and online portals;

    vi.  developing and holding ongoing training sessions on human trafficking; or providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

f.  Wyndham was in an agency relationship with Days Inns® branded hotels offering public lodging services in the hotel. This agency relationship was created through

---

[28] *Morrow, Georgia Crime Rates*, NEIGHBORHOOD SCOUT, https://www.neighborhoodscout.com/ga/morrow/crime (last visited October 23, 2019). See *Days Inns – Southlake: Reviews*, https://www.wyndhamhotels.com/en-ca/days-inn/morrow-georgia/di-atlnt-sthlk-mrrw/overview ("The fact that the police had to shut this place down should tell you everything you need to know about it... There were sketchy people around at all hours of the night and day.") See also *Days Inns – Southlake: Reviews* https://www.wyndhamhotels.com/en-ca/days-inn/morrow-georgia/di-atlnt-sthlk-mrrw/overview ("They are accepting guests & they are literally being shut down at any given moment for prostitution & inhabitable living conditions.")

Defendant Wyndham's exercise of an ongoing and systemic right of control over Days Inns® hotels by Defendant Wyndham's operations, including the means and methods of how Days Inns® branded hotels conducted daily business through one or more of the following actions:

    i.   hosting online bookings on Defendant Wyndham's domain;

    ii.   requiring Days Inns® branded hotels to use Defendant Wyndham's customer rewards program;

    iii.   setting employee wages;

    iv.   making employment decisions;

    v.   advertising for employment;

    vi.   sharing profits;

    vii.   standardized training methods for employees;

    viii.   building and maintaining the facility in a manner specified by the owner;

    ix.   standardized or strict rules of operation;

    x.   regular inspection of the facility and operation by owner;

    xi.   fixing prices; or

    xii.   other actions that deprive Days Inns® branded hotels of independence in business operations.

g.   An apparent agency also exists between Defendant Wyndham and Days Inns® hotels. Defendant Wyndham held out Days Inns® branded hotels to the public as possessing authority to act on its behalf.

h.   Given Defendant Wyndham's public statements on behalf of its hotel brands[29] and the control it assumed in educating, implementing, and directing its branded hotels,

---

[29] *See* MODERN SLAVERY STATEMENT, Wyndham Hotel & Resorts Inc. at https://corporate.wyndhamhotels.com/modern-slavery-statement/ ("Ranked among the World's Most Ethical Companies, our predecessor's parent company, Wyndham Worldwide Corporation, publicly acknowledged its commitment to operate its business in a manner consistent with the United Nations Universal Declaration of Human Rights and Global Compact since 2007 when it first published its Human Rights Policy

17

including Days Inns® branded hotels, Defendant Wyndham breached its duties in the following ways:

    i. did not adequately distribute information to assist employees in identifying human trafficking;

    ii. failed to provide a process for escalating human trafficking concerns within the organization;

    iii. failed to mandate managers, employees, or owners attend training related to human trafficking;

    iv. failed to provide new hire orientation on human rights and corporate responsibility;

    v. failed to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

    vi. failed to develop and hold or require ongoing training sessions on human trafficking; or

    vii. failed to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human trafficking prevention.

i. For years, Defendant Wyndham has demonstrated willful blindness to the rampant culture of sex trafficking which tragically occurs on its Days Inns® branded properties throughout the country. This entrenched and pervasive willful blindness to sex trafficking facilitated the victimization of Plaintiff H.M. at Days Inns® that forms the basis of this complaint.

---

Statement, a commitment which we continue.") *See also* Wyndham Hotel & Resorts, Inc., Our Brands – Days Inns by Wyndham at https://corporate.wyndhamhotels.com/our-brands/days-inn/ ("With over 1,800 properties worldwide, Days Inns helps guests make time with family and friends brighter. Nothing brings us closer like the experience of getting away and creating moments. It's time we all seize the days!") *See also* Wyndham Hotel & Resorts INC., Our Mission https://corporate.wyndhamhotels.com/about-us/mission-vision-values/ ("Our Core Values – Integrity: We hold ourselves to the highest standards. We're responsible, truthful and transparent. We do the right thing. Accountability: We honor our commitments and deliver results. Under any circumstance, we stand up and say: "Count on Me.")

j.   DAYS INNS®

    i.   In February 2019, a man ran a human trafficking operation out of a Days Inns® in Madison Heights, Michigan.[30]

    ii.   In August 2018, four people were arrested for trafficking a 15-year old girl out of a Days Inns® in Marietta, Georgia. They kept the young girl in captivity by threatening to kill her if she tried to escape.[31]

    iii.   In October 2015, a man prostituted women out of a Days Inns® in Reading, Pennsylvania. He controlled the women with drugs and set up sexual encounters.[32]

    iv.   In September 2018, a woman was caught sex trafficking two 17-year old girls at a Days Inns® in Fayetteville, North Carolina.[33]

    v.   In July 2018, a man used social media websites to coerce a young girl to come to a Days Inns® Gulfport, Mississippi. When she arrived, the man forced her into sexual servitude.[34]

    vi.   In December 2018, a couple coerced females from China to move to Maine by offering tourist visas. Upon arrival, the couple stripped the women and girls of their identification, advertised them as prostitutes on Craigslist, and forced them to sexually service men at two Days Inns® locations, one in Kittery and the other in Dover, New Hampshire.[35]

---

[30] *Man Charged for Sex Trafficking Out of Madison Heights Days Inns*, FOX 2 DETROIT, (Feb. 15, 2019) http://www.fox2detroit.com/news/local-news/man-arrested-for-sex-trafficking-out-of-madison-heights-days-inn

[31] Shaddi Abusaid, *Marietta Sex Trafficking Ring Thwarted, Police Say*, MARIETTA DAILY JOURNAL, (Aug. 21, 2018) https://www.mdjonline.com/news/marietta-sex-trafficking-ring-thwarted-police-say/article_997739c0-a55b-11e8-9647-338800611347.html

[32] Joseph Kohut, *Scranton Sex Trafficking Cases Move Forward*, TIMES TRIBUNE, (Dec. 4, 2016) https://www.poconorecord.com/news/20161204/scranton-sex-trafficking-cases-move-forward

[33] Nancy McCleary, *Fayetteville Woman Charged in Human Trafficking Operation*, FAYETTEVILLE OBSERVER, (Sept. 21, 2018), https://www.fayobserver.com/news/20180921/fayetteville-woman-charged-in-human-trafficking-operation.

[34] Robin Fitzgerald, *Girl Found At a Gulfport Hotel. A Man With Her Is Accused Of Human Trafficking, Sheriff Says*, SUN HERALD, (July 19, 2018)  https://www.sunherald.com/news/local/crime/article215055145.html

[35] Elizabeth Dinan, *Husband, Wife Charged In Sex Trafficking, Prostitution 'Scheme'*, SEACOAST ONLINE, (Dec. 14, 2018) https://www.seacoastonline.com/news/20181214/husband-wife-charged-in-sex-trafficking-prostitution-scheme

vii.   In June 2018, three individuals were arrested in a human trafficking scheme at a Days Inns® in Virginia Beach, Virginia.[36]

## D. THE SEX TRAFFICKING OF H.M.

50.   The facts alleged herein stem from a sex trafficking ring operating in northern Georgia.  While victimized by her trafficker in Georgia, H.M. was subject to repeated instances of rape, physical abuse, verbal abuse, exploitation, psychological torment, and kidnapping at the Defendants' hotels for nearly six months in 2016.

51.   H.M. had escaped an ex-husband who was a tornado of physically abuse and a heroin addiction. Despite finally leaving him, H.M.'s ex-husband had introduced her to heroin and desperate for any escape from a harsh reality she too became an addict.

52.   Fortified to start anew, H.M. checked herself into a rehabilitation facility and graduated completely sober.  However, after her graduation she was left with nowhere to go and limited resources. H.M. checked into the cheapest hotel she could find.

53.   So, at 25 years old H.M. was living out of the Southside Inn located at 6370 Old Dixie Highway in Jonesboro, Georgia, recovering from an abusive marriage and the heroin addiction it had caused when she was targeted by her trafficker.

54.   In approximately 2016, H.M. was approached by a good-looking man outside of the Southside Inn who introduced himself only as "Detroit."  Detroit struck up a conversation with H.M. and over time she came to see him as a friend. When H.M.'s limited funds ran out shortly thereafter, Detroit immediately lent her the money she needed to remain at the Southside Inn.

55.   It was then that Detroit became violent. One evening, he sat on top of H.M.'s torso and kept punching her face, choking her with his bare hands until she was dizzy, and then rising only to kick her repeatedly as she lay on the ground. Detroit declared to H.M. that he owned her now and she had to have

---

[36] Jason Marks, *Three Sex Trafficking Suspects Arrested By Virginia Beach Police*, 10 WAVY, (June 1, 2018) https://www.wavy.com/news/local-news/virginia-beach/three-sex-trafficking-suspects-arrested-by-virginia-beach-police/1213339402

sex with his clients because of the debt she owed him for the room fare he had provided her.

56. From this point on, H.M. was constantly monitored by her trafficker or one of his lesser partners, who also participated in the sex trafficking ring. H.M. was unable to go anywhere alone; including the bathroom. In addition, her trafficker took all of her belongings; including her purse, clothes, ID, and cellphone. Due to her lack of autonomy and access to anyone who could help her, H.M. was unable to escape her trafficker.

57. Detroit worked a number of the hotels in the vicinity of the Southside Inn including the America's Best Value Inn℠ located at 6358 Old Dixie Highway in Jonesboro, GA and the Days Inns® located at 1599 Adamson Parkway in Morrow, GA.

58. H.M. was trafficked at the Southside Inn, America's Best Value Inn℠, and the Day's Inn℠; hotels that are all in proximity to one another along a stroll, track, strip, or drag, known for a high incidence of crime and trafficking for the purpose of commercial sex. H.M.'s trafficker instructed his partners to constantly guard the exits of each of the buildings to ensure none of the women they were trafficking for commercial sex could escape.

59. H.M.'s trafficker chose these hotels in the Jonesboro/Morrow area of Georgia because they had a reputation for commercial sex and illegal activity.[37]

60. H.M. was routinely required to have sex for payment with various buyers at the Defendants' hotels in response to advertisements for commercial sex that her trafficker posted on www.backpage.com without her consent. H.M.'s trafficker would also solicit dates for H.M. by hailing male individuals on the street from the balconies of America's Best Value Inn℠.

61. The America's Best Value Inn℠ had doors that led to the exterior directly from the room.  Over six months H.M.'s trafficker and his partners routinely rented rooms for H.M. and the other women to

---

[37] *See 2 Dead After Shooting At The Southside Inn*, WSBTV2, (Aug. 21, 2016) https://www.wsbtv.com/news/local/3-shot-2-dead-at-the-southside-inn/427536149; *See also Clayton County Gang Unit Tracks 'Most Wanted' Fugitive To Old Dixie Hotel,* HENRY HERALD, (March 14, 2018) https://www.henryherald.com/news/clayton-county-gang-unit-tracks-most-wanted-fugitive-to-old/article_9c1dc5de-5cf1-5078-9c52-6f9f45577a23.html; *See also* Joel Hall, CLAYTON NEWS DAILY, (Feb. 23, 2009) *Twelve Snared In Prostitution* Sting, https://www.news-daily.com/news/twelve-snared-in-prostitution-sting/article_33091062-5bc2-5fb6-82e4-9df470721d62.html ("Clayton County Police spokeswoman Lt. Rebecca Brown said in recent years, the area, which is parallel to Tara Boulevard, has become plagued by prostitution.")

sexually service the clients.

62.  H.M. was forced to perform commercial sex acts on handfuls of men every day. Each man entering the rooms at the America's Best Value Inn℠ and Days Inns® as an unannounced non-paying guest and leaving shortly after they arrived.  The foot traffic to the rooms was constant and voluminous.

63.  At both the America's Best Value Inn℠ and Days Inns® H.M.'s trafficker frequently paid for the room one night at a time and always paid in cash, he was on a first name basis with the front desk manager and many members of the hotel staff and spoke with them on a frequent and regular basis.  The rooms were often left with numerous used condoms scattered across various surfaces at the end of the evening.  Regardless, H.M's trafficker repeated the process multiple times over the months she was in captivity.

64.  When H.M. did appear in the common areas of the hotels she appeared incredibly malnourished and withdrawn. She was also consistently dressed in clothing that was inappropriate for the climate and situation and displayed poor hygiene as her trafficker deprived her of food, clothing and the permission to shower. When H.M. finally escaped her trafficker she shockingly weighed only 90 lbs.

65.  H.M.'s trafficker was violent and repeatedly assaulted H.M. while they were at both the America's Best Value Inn℠ and Days Inns®. The attacks on H.M. were loud enough for the hotel patrons or staff to hear and recognizing this H.M.'s trafficker would try to hold her mouth closed as he attacked her and she tried to scream for help.

66.  On several occasions at both the America's Best Value Inn℠ and Days Inns®, H.M.'s trafficker had injured her so badly that she knew that her injuries were visible and noticeable by the public. H.M. still has scars from Detroit's severe beatings.

67.  At both the America's Best Value Inn℠ and Days Inns® housekeeping staff would come to the room where H.M.'s trafficker was keeping her and he would demand that they leave until eventually housekeeping stopped coming by the rooms completely.

68.  At the Days Inns® the front desk manager specifically offered to give H.M.'s trafficker his rooms for a discount in exchange for sex with H.M.

22

69.   H.M.'s captivity by Detroit was compounded by the fact that the manager of the Southside Inn was a regular client of her trafficker that he always forced her to service.

70.   H.M. was able to escape from the Southside Inn when her trafficker was distracted by one of his partners. H.M. ran to the front desk of the Southside Inn and while crying hysterically in a rush of panic asked for a phone.

71.   However, the manager behind the desk was the same manager who was a client of her trafficker and he refused to allow her use of the phone. Detroit caught up to H.M. and demanded that return to her room and tried to shove her back inside. The manager of the Southside Inn did nothing but demand "that they take their issues out of the lobby."

72.   H.M. quickly turned and ran until she reached the Americas Best Value Inn$_{30}$ where she begged to use a phone to call for help and the familiar front desk manager prohibited her from using a phone and demanded that she leave.

73.   Eventually, another hotel allowed H.M. to use the phone. H.M. called her sister who called the police and recovered H.M.

74.   Prior to, during, and following the incidents described herein, the Defendants had actual and/or constructive notice of drug dealing, prostitution, and/or general safety concerns at their hotels, including, but not limited to, immediate contact, video surveillance of their hotels, as well as oral or written complaints regarding said suspicious activity. The Defendants failed to take any actions to curtail these activities.

75.   Had the Defendants been paying attention to the activities being conducted at their hotels and on their properties, and the apparent red flags outlined above, it would have been impossible for them not to notice the victimization of H.M.

### E.  THE DEFENDANTS FACILITATED THE TRAFFICKING OF H.M.

76.   Defendants RLH Corporation and Wyndham profited from the sex trafficking of H.M. and knowingly or negligently aided and engaged with her trafficker in his sex trafficking venture. The

23

Defendants leased rooms to H.M.'s trafficker, when they knew, or should have known, that he was using, used, and would use, their room to imprison H.M., physically assault her, and subject her to repeated exploitation as he forced her into sexual servitude.

77. Defendants RLH Corporation and Wyndham knew, or should have known, that H.M. was being trafficked for commercial sex and that the Defendants were knowingly benefiting financially from said exploitation, because H.M.'s trafficker frequented the Defendants' hotels as well as her buyers.

78. Defendants RLH Corporation and Wyndham actively participated in this illegal endeavor by knowingly or negligently providing lodging to H.M.'s trafficker in which to harbor H.M. in his trafficking of her.

79. Defendants RLH Corporation and Wyndham Corporation profited from the sex trafficking of H.M. and knowingly or negligently aided and participated with H.M.'s trafficker in his venture.

80. Defendants RLH Corporation and Wyndham actively participated in this illegal endeavor by knowingly or negligently providing lodging to those who purchased sex from H.M. and in which to harbor H.M. while she was being trafficked.

81. The Defendants all had the opportunity to stop H.M.'s trafficker and offenders like him from victimizing H.M. and others like her. Instead, every Defendant failed to take reasonable measures to stop sex trafficking from occurring in their hotels or abstain from profiting from it.

82. The Defendants all financially benefited from the sex trafficking of H.M., and other victims like her, and developed and maintained business models that attract and foster the commercial sex market for traffickers and buyers alike.

83. Defendants RLH Corporation and Wyndham enjoy the steady stream of income that sex traffickers bring to their budget level hotel brands, such as Days Inns® and America's Best Value Inn℠.

84. Defendants RLH Corporation and Wyndham financially benefit from their ongoing reputation for privacy, discretion, and the facilitation of commercial sex.

85. The Defendants failed to take any steps to alert the authorities, properly intervene in the situation, refuse to rent the room, or take reasonable security steps to improve awareness of sex trafficking and/or

24

prevent sexual exploitation on their properties.

86.    The Defendants maintained their deficiencies to maximize profits by:

    a.    Reducing the cost of training employees and managers of how to spot the signs of human trafficking and sexual exploitation and what steps to take;

    b.    Not refusing room rentals, or reporting guests to law enforcement, in order to maximize the number of rooms occupied and the corresponding rates, even if the rooms rented were to sex traffickers or buyers;

    c.    Lowering security costs by not having proper security measures, including, but not limited to, employing qualified security officers to actively combat human trafficking and sexual exploitation;

87.    As a direct and proximate result of these egregious practices on the part of the Defendants, H.M. and victims of sex trafficking and exploitation like her, have been permanently injured and damaged physically, emotionally, psychologically, and financially.

## CAUSES OF ACTION

### A.  COUNT ONE – 18 U.S.C §1595 ("TVPRA")

88.    The Plaintiff H.M. incorporates each foregoing allegation.

89.    H.M. is a victim of sex trafficking within the meaning of 18 U.S.C. §1591(a) and is therefore entitled to bring a civil action under 18 U.S.C. §1595.

90.    The Defendants' acts, omissions, and commissions, taken separately and/or together, outlined above, constitute a violation of 18 U.S.C. §1595. Specifically, the Defendants had a statutory obligation not to benefit financially from a venture that they knew, or should have known, to engage in violations of 18 U.S.C. §1591 (a).  At all relevant times, the Defendants breached this duty by participating in, and facilitating, the harboring and providing of H.M. for the purposes of commercial sex induced by force, fraud, or coercion, by their acts, omissions, and commissions.

91.    The Defendants have financially benefited as a result of these acts, omissions, and/or commissions by keeping operating costs low, and maintaining the loyalty of the segment of their customer

25

base that seeks to participate in the sex trade. Moreover, the Defendants directly benefitted from the trafficking of H.M. on each occasion they received payment for rooms that she was being kept in at the Defendants' hotels. The actions, omissions, and/or commissions alleged in this pleading were for and the proximate cause of H.M.'s injuries and damages.

92. H.M. has suffered substantial physical and psychological injuries as the result of being trafficked and sexually exploited at the Defendants' hotels and properties in violation of 18 U.S.C. §1591 (a).

## **PRAYER FOR RELIEF**

## **PRAYER FOR RELIEF**

WHEREFORE based on the forgoing the Plaintiff seeks injunctive relief in the form of a judgement requiring the Defendants to institute sufficient audits, policies, rules, and requirements of their employees, agents, franchisees, contractors, and/or all others operating under their flag, logo, trademark, or advertising umbrella to insure that the actions and activities outlined above no longer occur and may not serve in the future to jeopardize the health and safety of individuals similarly situated to the Plaintiff herein.

AND WHEREFORE on the basis of the foregoing, the Plaintiff requests that a jury be selected to hear this case and render a verdict for the Plaintiff, and against the Defendant, and that the jury selected award damages to the Plaintiff in an amount which will effectively prevent other similarly caused acts and adequately reflects the enormity of the Defendant's wrongs and injuries to the Plaintiff due to the Defendant's faulty conduct, including but not limited to:

a. All available compensatory damages for the described losses with respect to each cause of action;

b. past and future medical expenses, as well as the costs associated with past and future life care;

26

c.  past and future lost wages and loss of earning capacity;

d.  past and future emotional distress;

e.  consequential and/or special damages;

f.  all available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

g.  punitive damages with respect to each cause of action;

h.  reasonable and recoverable attorneys' fees;

i.  costs of this action; and

j.  pre-judgment and all other interest recoverable

Further, the Plaintiff requests that the Court enter judgment consistent with the jury's verdict, and prays for any other damages and equitable relief the Court or jury deems appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

The Plaintiff demands a trial by jury on all issues so triable in this civil action.

Dated: January 13, 20202

**RESPECTFULLY SUBMITTED,**
**PLAINTIFF,**
**By Her Attorneys,**

Respectfully Submitted,

By:  /s/JOHN T. MITCHELL, JR.
John T. Mitchell, Jr. (GA Bar No.: 513150)
John T. Mitchell Jr., LLC
3646 Vineville Avenue
Macon, Georgia 31204
Telephone: (478) 477-8485
Facsimile: (478) 477-8043
jmitchell@jtmitchelllaw.com

27

and

Neil D. Overholtz (FL Bar No.: 188761)
Noverholtz@awkolaw.com
Jennifer M. Hoekstra (LA Bar No.: 31476)
Jhoekstra@awkolaw.com
Aylstock, Witkin, Kreis & Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502-5998
Telephone: (850) 202-1010
Fax: (850) 916-7449
***ATTORNEYS FOR PLAINTIFF***

# EXHIBIT A



## Who We Are

The Blue Campaign is the unified voice for the U.S. Department of Homeland Security's (DHS) efforts to combat human trafficking. Working with law enforcement, government, and non-governmental and private organizations, the Blue Campaign strives to protect the basic right of freedom and bring those who exploit human lives to justice.

## What's Inside?

This toolkit offers tips and resources that can help you inform and educate your employees about human trafficking.

It includes posters of human trafficking warning signs for four groups of employee:

- Hotel and Motel Staff
- Housekeeping, Maintenance and Room Staff
- Concierge, Bellman, Front Desk, Security and Valet Staff
- Food and Beverage Staff

These posters can be displayed in common areas of your business where employees congregate (such as staff break, laundry and maintenance rooms).

www.dhs.gov/bluecampaign

30



# What is Human Trafficking?

**Human trafficking is modern-day slavery and involves the use of force, fraud or coercion to obtain labor or commercial sex. Every year, millions of men, women and children are trafficked in countries around the world, including the United States.**

There are different types of human trafficking:

- **Sex Trafficking**
  Victims of sex trafficking are manipulated or forced to engage in sex acts for someone else's commercial gain. Sex trafficking is not prostitution.

  Anyone under the age of 18 engaging in commercial sex is considered to be a victim of human trafficking. No exceptions.

- **Forced Labor**
  Victims of forced labor are compelled to work for little or no pay, often manufacturing or growing the products we use and consume every day.

- **Domestic Servitude**
  Victims of domestic servitude are forced to work in isolation and are hidden in plain sight as nannies, housekeepers or domestic help.

### Human trafficking and the hospitality industry

Traffickers often take advantage of the privacy and anonymity offered by the hospitality industry. They can operate discreetly because staff and guests may not know the signs of human trafficking.

You may have employees who are victims of forced labor. If a third party applied for a position on behalf of an individual or if employees are not receiving their own paychecks, these could be signs of human trafficking.

Hotels and motels are also major locations where traffickers force sex trafficking victims to provide commercial sex to paying customers. Victims may be forced to stay at a hotel or motel where customers come to them, or they are required to go to rooms rented out by the customers.

### What actions can I take at my business to help stop human trafficking?

You play a significant role in helping to stop this terrible crime by:

- Knowing the signs of human trafficking.
- Designing a plan of action to respond to reports of human trafficking in your business.
- Partnering with agencies that provide services to victims of human trafficking. In the case of lodging, consider offering vouchers to victims. Immediate housing for victims plays a vital role in beginning a victim's healing process.
- Providing employee training to help them understand and identify signs of human trafficking.
- Distributing and posting the fact sheets in this kit to your employees.

Information on additional resources, literature, materials, and training offered by the Blue Campaign can be found at www.dhs.gov/bluecampaign.





# SIGNS OF HUMAN TRAFFICKING
## For **Hotel** and **Motel** Staff

Hotel and motel employees are often in the best position to see potential signs of human trafficking, especially since your duties give you access to different areas of the properties. You may also have direct or indirect contact with both traffickers and victims.

### GENERAL INDICATORS

- Individuals show signs of fear, anxiety, tension, submission, and/or nervousness.
- Individuals show signs of physical abuse, restraint, and/or confinement.
- Individuals exhibit evidence of verbal threats, emotional abuse, and/or being treated in a demeaning way.
- Individuals show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior.
- Individuals lack freedom of movement or are constantly monitored.
- Individuals avoid eye contact and interaction with others.

- Individuals have no control over or possession of money or ID.
- Individuals dress inappropriately for their age or have lower quality clothing compared to others in their party.
- Individuals have few or no personal items—such as no luggage or other bags.
- Individuals appear to be with a significantly older "boyfriend" or in the company of older males.
- A group of girls appears to be traveling with an older female or male.
- A group of males or females with identical tattoos in similar locations. This may indicate "branding" by a trafficker.

*Each indicator alone may not necessarily mean a person is being trafficked.*

### WHAT TO DO IF YOU SUSPECT HUMAN TRAFFICKING

Do not at any time attempt to confront a suspected trafficker directly or alert a victim to your suspicions.

Call 9-1-1 for emergency situations—threats of violence, physical assault, emergency medical needs, etc.

Follow your corporate protocol, such as by notifying management and security.

Call 1-866-DHS-2-ICE (1-866-347-2423) to report suspicious criminal activity to federal law enforcement. Highly trained specialists take reports from both the public and law enforcement agencies. Submit a tip at www.ice.gov/tips.

To get help from the National Human Trafficking Resource Center (NHTRC), call 1-888-373-7888 or text HELP or INFO to BeFree (233733).

www.dhs.gov/bluecampaign

32





# SIGNS OF HUMAN TRAFFICKING
### For Housekeeping, Maintenance, and Room Service Staff

Housekeeping, maintenance, and room service staff typically have the most access to guest rooms where signs of human trafficking may be apparent. By being conscious of human trafficking indicators, you can help identify possible human trafficking activities and victims.

## GENERAL INDICATORS

- "Do Not Disturb" sign used constantly.
- Requests room or housekeeping services (additional towels, new linens, etc.), but denies hotel/motel staff entry into room.
- Refusal of cleaning services for multiple days.
- Excessive amounts of cash in a room.
- Smell of bodily fluids and musk.
- Presence of multiple computers, cell phones, pagers, credit card swipes, or other technology.
- The same person reserving multiple rooms.
- Individuals leaving room infrequently, not at all, or at odd hours.
- Children's items or clothing are present but no child registered with the room.

- Individuals loitering in hallways or appearing to monitor the area.
- Excessive amounts of alcohol or illegal drugs in rooms.
- Evidence of pornography.
- Minors left alone in room for long periods of time.
- Excessive number of people staying in a room.
- Extended stay with few or no personal possessions.
- Provocative clothing and shoes.
- Constant flow of men into a room at all hours.
- Excessive amounts of sex paraphernalia in rooms (condoms, lubricant, lotion, etc.).
- Rooms stocked with merchandise, luggage, mail packages, and purses/wallets with different names.

*Each indicator alone may not necessarily mean a person is being trafficked.*

## WHAT TO DO IF YOU SUSPECT HUMAN TRAFFICKING

Do not at any time attempt to confront a suspected trafficker directly or alert a victim to your suspicions.

Call 9-1-1 for emergency situations—threats of violence, physical assault, emergency medical needs, etc.

Follow your corporate protocol, such as by notifying management and security.

Call 1-866-DHS-2-ICE (1-866-347-2423) to report suspicious criminal activity to federal law enforcement. Highly trained specialists take reports from both the public and law enforcement agencies. Submit a tip at www.ice.gov/tips.

To get help from the National Human Trafficking Resource Center (NHTRC), call 1-888-373-7888 or text HELP or INFO to BeFree (233733).

www.dhs.gov/bluecampaign

33



# SIGNS OF HUMAN TRAFFICKING

For **Concierge, Bellman, Front Desk, Security,** and **Valet** Staff



Concierge, bellman, front desk, security, and valet staff are typically the first to see guests when they enter the hotel. When checking in or requesting hotel amenities, a guest may exhibit behavior indicating human trafficking.

## GENERAL INDICATORS

- Patrons checking into room appear distressed or injured.
- The same person reserving multiple rooms.
- Few or no personal items when checking in.
- Room paid for with cash or pre-loaded credit card.
- Excessive use of hotel computers for adult oriented or sexually explicit websites.
- Patrons not forthcoming about full names, home address or vehicle information when registering.
- Minor taking on adult roles or behaving older than actual age (paying bills, requesting services).
- Patron appears with a minor that he or she did not come with originally.
- Rentals of pornography when children are staying in the room.
- Individuals dropped off at the hotel or visit repeatedly over a period of time.

- Individuals leaving room infrequently, not at all, or at odd hours.
- Minor with a patron late night or during school hours (and not on vacation).
- Individuals checking into room have no identification.
- Room is rented hourly, less than a day, or for long-term stay that does not appear normal.
- Patrons request information or access to adult services or sex industry.
- Room rented has fewer beds than patrons.
- Individuals selling items to or begging from patrons or staff.
- Individuals enter/exit through the side or rear entrances, instead of the lobby.
- Car in parking lot regularly parked backward, so the license plate is not visible.

*Each indicator alone may not necessarily mean a person is being trafficked.*

## WHAT TO DO IF YOU SUSPECT HUMAN TRAFFICKING

- Do not at any time attempt to confront a suspected trafficker directly or alert a victim to your suspicions.
- Call 9-1-1 for emergency situations—threats of violence, physical assault, emergency medical needs, etc.
- Follow your corporate protocol, such as by notifying management and security.
- Call 1-866-DHS-2-ICE (1-866-347-2423) to report suspicious criminal activity to federal law enforcement. Highly trained specialists take reports from both the public and law enforcement agencies. Submit a tip at www.ice.gov/tips.
- To get help from the National Human Trafficking Resource Center (NHTRC), call 1-888-373-7888 or text HELP or INFO to BeFree (233733).

www.dhs.gov/bluecampaign





For **Food** and **Beverage** Staff

Food and beverage staff may have access to a guest's room or see them using the hotel restaurant or bar. Be conscious of these signs indicating a guest may be a victim of human trafficking.

**GENERAL INDICATORS**

- Patron entertaining a minor at the bar or restaurant that he/she did not come in with originally.
- Patron claims to be an adult although appearance suggests he/she is a minor.
- Individuals loitering and soliciting male patrons.
- Individuals waiting at a table or bar and picked up by a male (trafficker or customer).
- Individuals asking staff or patrons for food or money.
- Individuals taking cash or receipts left on tables.

*Each indicator alone may not necessarily mean a person is being trafficked.*

**WHAT TO DO IF YOU SUSPECT HUMAN TRAFFICKING**

Do not at any time attempt to confront a suspected trafficker directly or alert a victim to your suspicions.

Call 9-1-1 for emergency situations—threats of violence, physical assault, emergency medical needs, etc.

Follow your corporate protocol, such as by notifying management and security.

Call 1-866-DHS-2-ICE (1-866-347-2423) to report suspicious criminal activity to federal law enforcement. Highly trained specialists take reports from both the public and law enforcement agencies. Submit a tip at www.ice.gov/tips.

To get help from the National Human Trafficking Resource Center (NHTRC), call 1-888-373-7888 or text HELP or INFO to BeFree (233733).

www.dhs.gov/bluecampaign